IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| DAVID COPELAND,<br><br>　　　　Plaintiff<br><br>　　vs.<br><br>D. PERRY, D. OBERLANDER,<br><br>　　　　Defendants | 1:22-CV-00109-RAL<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>MEMORANDM OPINION ON<br>DEFENDANTS' MOTION TO DISMISS<br>PLAINTIFF'S AMENDED COMPLAINT<br><br>IN RE: ECF NO. 25 |

I.　Introduction

　　Plaintiff David Copeland, an inmate currently incarcerated at the State Correctional Institution at Forest, filed this lawsuit alleging that Defendants Superintendent Oberlander and Unit Manager Perry removed the safety bars from the top bed bunks in his housing unit and thereby knowingly increased the risk of inmates being injured in falls from top bunks. *See* ECF No. 24 (Amended Complaint), pp. 2-3. Copeland alleges that Defendants' action caused him to sustain injuries—including a fractured left arm and wrist—when he rolled over and fell from the top bunk. *Id.*

　　Defendants have moved to dismiss Copeland's Amended Complaint. They contend first, that neither of them was personally involved in removing the bed rails from K-Block; second, that the absence of top bunk safety rails is not an Eighth Amendment violation; and third, the removal of the bed rails was at most a negligent act, which is not recoverable under 42 U.S.C.

1

§ 1983. Upon consideration of the Defendants' motion and Copeland's response in opposition, the motion will be **GRANTED**.

II.     Standard of Decision

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Iqbal*, 556 U.S. 662. Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at

555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Copeland is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence

construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

III.     Discussion and Analysis

   A.     Factual Background

Taken as true for purposes of the instant motion, Copeland alleges that while asleep on December 27, 2021, he rolled over and fell from his top bunk to the floor of his cell, a distance of five to six feet. ECF No. 24, p. 3. He fractured his left arm and wrist and sustained injuries to his head, knee and elbow. *Id.*, p. 6, ¶ 8. He received medical care, the efficacy of which he does not challenge. *Id.*, p. 7, ¶ 9.

Copeland blames the lack of a top bunk safety rail for his injuries. He alleges that the top bunks in every housing unit at SCI-Forest had safety rails measuring approximately two feet wide and positioned five to six feet off the ground until the Defendants "deliberately modified" the top bunks in K-Block to remove the safety rail feature. *Id.*, p. 7, ¶ 10. He further alleges that a K-Block is the only housing unit in which safety rails were removed from top bunks. He also avers that inmates repeatedly complained, filed grievances, and initiated lawsuits about the absence of top bunk rails, although it is unclear from the Amended Complaint whether Copeland claims that any of the complaints, grievances, or lawsuits predate his fall and injuries. Copeland asserts that the Defendants have not re-installed the top bunk rails despite their knowledge of the significant risk to inmate safety created by their absence. *Id.*, p. 3.

4

B.   Conditions of Confinement Claim

Copeland does not challenge the medical treatment he received after his fall. Instead, he claims that the conditions of his confinement subjected him to an unreasonable risk to his personal safety and caused him to sustain serious injuries. To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must demonstrate both an objective element – that the deprivation was sufficiently serious, and a subjective element – that the prison officials acted with a sufficiently culpable mind. *Wilson v. Seiter*, 501 U.S. 294 (1991). Prison conditions may objectively violate the Eighth Amendment's proscription against cruel and unusual punishment when inmates are deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Such necessities include food, clothing, shelter, medical care, and relevant here, reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). In determining whether defendants have acted with the requisite culpable state of mind concerning inhumane conditions of confinement, "it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle [v. Gamble*, 429 U.S. 97 (1976)]." *Wilson*, 501 U.S. at 303.

In this context, "deliberate indifference" is a subjective standard: "the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Wetzel*, 256 F.3d 120, 125 (3d Cir. 2001). It is not sufficient that the official should have known of the risk. *Id.* at 133. Mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105–06. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer*

*v. Brennan*, 511 U.S. 825, 842 (1994). In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

      C. Copeland Has Not Alleged Facts Sufficient to Support an Eighth Amendment Conditions of Confinement Claim.

Taking Defendants second argument first, they contend that the lack of bed rails does not amount to a violation of the Eighth Amendment. *See* ECF No. 17, p. 4. Not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, a condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298. The facts alleged in Copeland's Amended Complaint fail to meet this standard. "Sleeping in a bunk bed without guardrails does not violate contemporary standards of decency, and thus, does not constitute cruel and unusual punishment." *Mikell v. Harry*, 2018 WL 501000, at *4 (M.D. Pa., Jan. 22, 2018) (citing *Brown v. Pastrana*, 446 Fed. Appx 270, 272 (11th Cir. 2011). Courts have consistently found that a lack of safety rails on top bunks does not pose a risk of harm serious enough to support an Eighth Amendment claim. *See, e.g., Patton v. Doran*, 2005 WL 2334367, at *2 (M.D. Pa. Sep. 20, 2005) (holding that an inmate's allegation that prison officials acted with deliberate indifference by failing to install safety rails on top bunks fails to state a claim because the condition did not create a substantial risk of serious harm). *See also, Mikell,* 2018 WL 501000, at *5 ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference."); *Vercusky v. Purdue*, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court similarly concludes that

6

Plaintiffs allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation."); *Tutora v. Sweeney*, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 Fed. Appx 217, 218-19 (3d Cir. 2010) (per curiam) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen).

Copeland does not allege that he had a medical or other physical condition that necessitated he be given a bottom bunk assignment or that exposed him to a greater risk of falling from the top bunk than any other adult inmate. *See, e.g., Hunter v. Barrett*, 2022 WL 18358884, at *6 (W.D. Pa. Nov. 16, 2022) (noting that where an inmate has a serious medical need requiring him to use the bottom bunk, prison officials can be deliberately indifferent when

they disregard that need); *Saunders v. GEO Grp., Inc.*, 2019 WL 5558659, at *4 (E.D. Pa. Oct 25, 2019).

The facts alleged in Copeland's Amended Complaint do differ from those alleged in other cases in two potentially material respects. First, he alleges that the top bunks on K-Block originally had bed rails but that the Defendants directed that they be removed. And second, Copeland contends that the rails were removed only from the top bunks in K-Block and nowhere else in the institution. Nevertheless, the facts alleged still do not support an inference that the removal of top bunk bed rails subjected him to a condition so reprehensible and inhumane that this case is distinguishable from the multitude of cases rejecting the absence of top bunk rails as an Eighth Amendment violation. He has not pleaded, for example, that he had a medical or other condition that created an abnormally high risk of falling from a top bunk or that the Defendants removed the bed rails as a form of punishment or as a method of retaliation for the exercise of his constitutional rights.

As they now stand, Copeland's allegations are insufficient to state an Eighth Amendment violation.[1]

D.   Claims of Negligence

The Amended Complaint also speaks of the Defendants' "negligence," and alleges violations of state law. *See, e.g.,* ECF No. 24, p. 9, ¶ 17 (citing 42 Pa. C.S.A. § 8522). But mere negligence does not satisfy the deliberate indifference standard applicable to an Eighth Amendment claim. *Estelle*, 429 U.S. at 105–06; *Williams v. Russell*, 2021 WL 4803829, at *5

---

[1] Given this, the Court need not reach Defendants' argument that the Amended Complaint fails to allege their personal involvement in actionable conduct.

n.5 (E.D. Pa. Oct. 13, 2021 (collecting cases). And any attempt by Copeland to assert a state law negligence claim against the Defendants would be futile as both are protected by sovereign immunity. *See Baez v. Froehlich*, 2021 WL 4341191, at *^ n.8 (W.D. Pa. Sep. 23, 2021) (citing *Nguien v. Pennsylvania Dep't of Corr.*, 2021 WL 3563373, at *6 (W.D. Pa. Aug. 12, 2021) (noting negligence claims against the Commonwealth, the DOC, or its officers and employees, are barred by the doctrine of sovereign immunity).

    D.    Further Amendment

In pro se civil rights actions, "plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaints," unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2022). Here, the Court cannot say with certainty that Copeland cannot allege additional facts sufficient to support a viable claim under federal law. Therefore, the Court will dismiss his Amended Complaint without prejudice and with leave to file a second amended complaint.

A separate order follows.

DATED this 1st day of May, 2023.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE